IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**LEONARDO L.**[1]

    Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,**

    Defendant.

Civ. No. 6:23-cv-01792-CL

**OPINION AND ORDER**

MARK D. CLARKE, Magistrate Judge.

Plaintiff Leonardo L. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his claims for disability insurance benefits and supplemental security income benefits. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c) For the reasons provided below, the Commissioner's decision is AFFIRMED.

## PROCEDURAL BACKGROUND

On September 25, 2020, Plaintiff protectively filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), alleging disability beginning on

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

1 - Opinion and Order

April 1, 2014. Tr. 451-465. The claims were denied initially and on reconsideration. Tr. 302, 303, 346, 347. Plaintiff requested a hearing before an administrative law judge and appeared before ALJ John Sullivan on July 6, 2022. Tr. 237-60. The ALJ found Plaintiff not disabled in a written decision issued October 19, 2022. Tr. 220-31. The Appeals Council denied review on September 29, 2023, making the ALJ's decision the final agency decision. Tr. 1-6. Plaintiff's timely appeal followed.

## FACTUAL BACKGROUND

Plaintiff was 18 years of age on his alleged onset date. Tr. 229. At the time of his hearing, he had nearly completed his associate's degree but had no past relevant work. Tr. 229, 246-47. He alleges disability due to mental illness, anxiety, depression, PTSD, and pediatric autoimmune neuropsychiatric disorder associated with streptococcal infections (PANDAS). Tr. 268.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§

2 - Opinion and Order

404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(a), 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

   a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c), 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(c); 416.920(a)(4)(v); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

See also *Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the

3 - Opinion and Order

Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

As a preliminary matter, the ALJ determined Plaintiff met the insurance requirements through March 31, 2018. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2014, his alleged onset date. Tr. 222. At step two, the ALJ found that Plaintiff had the following severe impairments: major depressive disorder vs bipolar disorder with congruent psychotic features; unspecified anxiety; posttraumatic stress disorder (PTSD); and attention deficit hyperactivity disorder (ADHD). Tr. 223. At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of a listed impairment. Tr. 223. The ALJ found that Plaintiff had the RFC to perform a full range of work with the following nonexertional limitations:

> [he] can understand, remember, and carry out simple routine instructions and tasks at reasoning level two or less and consistent with one and two step operations. His use of judgment is limited to performing simple work-related decisions. [He] is [able to] occasional[ly] interact with supervisors, coworkers, and the public. His ability to deal with the changes in the work setting is limited to making simple, work-related decisions. [His] time off task

4 - Opinion and Order

> includes, in addition to normal breaks, off task five percent of time in an eight-hour workday.

Tr. 225. At step four, the ALJ determined that Plaintiff has no past relevant work. Tr. 229. At step five, the ALJ found, in light of Plaintiff's age, education, work experience, and RFC, a significant number of jobs existed in the national economy such that Plaintiff could sustain employment despite his impairments, including such representative occupations as: office cleaner, pricer or price marker, and busser. Tr. 229-30. The ALJ thus found Plaintiff was not disabled within the meaning of the Act. Tr. 230.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

If the decision of the Appeals Council is the final decision of the Commissioner, this Court must review the decision of the Appeals Council to determine whether that decision is supported by substantial evidence. *Howard v. Heckler*, 782 F.2d 1484 (9th Cir. 1986). Where the evidence before the ALJ or Appeals Council is subject to more than one rational interpretation,

5 - Opinion and Order

the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the Commissioner's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff argues that remand is warranted because the ALJ erred in his evaluation of the medical opinions of Seth Cohen, LCSW, Bonnie McIrvin, LCSW, Laura Nydigger, LPC, and in his evaluation of Plaintiff's subjective symptom testimony.

### I.    Medical Opinion Evidence

In the context of social security claims, a medical opinion is a "statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more

6 - Opinion and Order

impairment-related limitations or restrictions[.]" 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2); *see also Rodin v. Comm'r of Soc. Sec.*, 2023 WL 3293423, at *12 (E.D. Cal. May 5, 2023) ("the revised regulations now more narrowly define as [medical opinion] a statement from a medical source about what a claimant can still do despite impairments"). ALJs must consider the persuasiveness of all medical opinion evidence. The most important considerations in evaluating the persuasiveness of medical opinions are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The supportability of a medical opinion is evaluated by examining the how well the relevant objective medical evidence and the medical source's explanation support the opinion, whereas consistency is evaluated by examining how consistent a medical opinion is with other medical opinions (and prior administrative findings) of record. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1); 404.1520c(c)(2), 416.920c(c)(2).

### A. Seth Cohen, LCSW

In March 2022, Seth Cohen, LCSW, provided a statement and mental RFC in support of Plaintiff's disability application. Tr. 4698-4700, 4702-05. The ALJ found Cohen's opinion partially persuasive to the extent that he found Plaintiff had no more than a moderate limitation in any area of functioning in his mental RFC. Tr. 228, 4702-03. However, the ALJ found Cohen's reports of ruminating behaviors and difficulty in social situations not persuasive, because they were not supported by the longitudinal record and were inconsistent with his activities of daily living. Tr. 228. The ALJ's conclusions amount to a reasonable reading of the record and are supported by substantial evidence.

To start, the ALJ properly concluded that the more restrictive limitations assessed by Cohen were not supported by the longitudinal record. Indeed, Cohen plainly states that his opined limitations are based not on observations, but on Plaintiff's self-reports. Tr. 4698, 4703.

7 - Opinion and Order

While basing a psychological opinion on self-reported symptoms is acceptable, the ALJ must still consider the report in context of the record, and the record shows that Cohen's own mental status exams of Plaintiff are generally normal. *See, e.g.*, Tr. 4594, 4597, 4603, 4618, 4620. Moreover, Cohen noted he had not administered any clinical assessments or tests and had not "observed patient in working environment." Tr. 4703. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (explaining that the most persuasive medical opinions are those that are best supported by relevant objective medical evidence and the medical source's explanation for the opinion).

The ALJ further noted that Plaintiff reported he was "doing well" to treating providers, including Cohen. Tr. 229, 4615. In reviewing the record, Plaintiff frequently reported to Cohen and other mental health providers that he was doing better and was "pretty content" when discussing his mental health struggles. *See, e.g.*, Tr. 1466, 1552-53, 1567, 1645, 1652, 1687, 1689, 1693, 1727, 4571, 4620, 4689, 4736, 4767, 4774, 4870. Even when Plaintiff gave two-weeks' notice to his job, citing anxiety, he quickly reframed his situation to "see this as an opportunity to explore other interests and career goals." Tr. 4618. Considering the evidence, it is clear that the ALJ did not err in finding the more restrictive limitations in Cohen's opinion were not supported by the record.

Nor did the ALJ err in finding that Plaintiff's activities of daily living exceeded the limitations ascribed in Cohen's opinion. Tr. 229. For example, Plaintiff attended college classes, frequently traveled, volunteered in different capacities, maintained relationships with friends and family, and at the time of his hearing, Plaintiff was engaged in two part-time internships as part of his academic curricula. Tr. 245-46, 1225, 1691, 1745, 4615. Plaintiff argues that the activities cited by the ALJ are not in conflict with Cohen's opinion that he is unable to maintain fulltime

8 - Opinion and Order

work. Pl. Br. at 8. However, the record clearly shows that Plaintiff is capable of functioning beyond the limitations assessed by Cohen, including many reports of spending time with friends, traveling abroad, going to college, and participating in academic internships. *See, e.g.*, Tr. 960, 1390, 1945, 2121, 3779, 3784, 3789, 3980. Thus, the ALJ did not err in finding Plaintiff's activities of daily living were inconsistent with the limitations assessed in Cohen's opinion.

## B. Bonnie McIrvin, LCSW

In April 2021, Bonnie McIrvin, LCSW, provided a medical opinion in support of Plaintiff's disability application. Tr. 4607. In her opinion, McIrvin stated she provided therapy services to Plaintiff from 2018 until January 2021. Tr. 4607. During their treating relationship, McIrvin diagnosed Plaintiff with severe persistent depressive disorder with symptoms including disorganization of thought, delusions, paranoia, and hopelessness. Tr. 4608. McIrvin opined that Plaintiff's symptoms are exacerbated by working in excess of 20 to 25 hours per week, and that Plaintiff "may never be able to work a full-time position" or achieve a full level of independence with no external support. Tr. 4608.

The ALJ found McIrvin's opinion limiting Plaintiff to part-time work not persuasive in part because it was based on subjective self-reports. Tr. 228. As discussed above, "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Here, the ALJ provided no further guidance as to why McIrvin's relying on Plaintiff's self-reports rendered her opinion unpersuasive. Moreover, the record shows that McIrvin conducted mental status evaluations as part of Plaintiff's treatment protocol, which the ALJ did not address, instead relying only on the premise that self-reports would be a sufficient reason to reject the opinion. Tr. 228. However, the Ninth Circuit has repeatedly held this type of reason to be inadequate

9 - Opinion and Order

without more. *See, e.g., Nygren v. Saul*, 854 Fed.Appx. 874, 876 (9th Cir. 2021) ("We have made clear that, in the context of mental health evidence, a clinical interview and mental health evaluation are objective measures and cannot be discounted as a 'self-report.') (quoting *Buck*, 869 F.3d at 1049).

The ALJ further stated that although Plaintiff had experienced difficulty maintaining employment, it is "less than clear that his inability to maintain employment results from his impairments rather than outside sources." Tr. 228. To support this conclusion, the ALJ pointed to a single record showing Plaintiff requested sleep medication in advance of an upcoming trip to Italy. Tr. 4615. Based on this record, the ALJ suggested that Plaintiff may have quit his job in anticipation of his family's annual trip to Italy. Tr. 228. However, the record in question is entirely without mention of Plaintiff leaving his work, instead focusing on sleep medication and a recent allergy symptom exacerbation. Tr. 4615-16. Additionally, the ALJ's statement ignores that Plaintiff told providers he quit due to "paranoid thoughts" and "struggles of toxicity/hostility in the workplace." Tr. 4690, 4618. Finally, the ALJ found Plaintiff's ability to "persist in videogame sessions in excess of the 20-to-25-hour weekly limit suggested" was inconsistent with McIrvin's opinion. But the ALJ did not explain how Plaintiff's videogame sessions were inconsistent with McIrvin's opinion. And without reasonable explanation from the ALJ, Plaintiff's ability to play videogames, alone and in his home environment, does not seem at all inconsistent with McIrvin's opinion.

The ALJ's treatment of McIrvin's opinion, therefore, lacks the substantial evidence required to allow the court meaningful review of his conclusions and amounts to error. That error, however, is ultimately harmless as the ALJ provided other substantial evidence to support his disability determination. *See, Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099

10 - Opinion and Order

(9th Cir. 2014) (noting that even when the ALJ commits legal error, the decision will be upheld where that error is harmless, meaning it is "inconsequential to the ultimate nondisability determination." (quoting *Molina v. Astrue*, 674 F.3d 1104, 1105 (9th Cir. 2012)). Throughout his decision, the ALJ points to evidence that Plaintiff was capable of work beyond the part-time limitation opined by McIrvin, including Plaintiff's ability to go to school, and completing two internships in the same timeframe. Tr. 226. Additionally, the record shows that Plaintiff was able to travel without difficulty, and even volunteered abroad for four months in Italy at a turtle rescue facility. *See, e.g.*, Tr. 1691, 1693, 1981, 2109, 2149. Thus, while the ALJ's evaluation of McIrvin's opinion was flawed, his ultimate disability conclusion was not.

### C. Laura Nydigger, LPC

In February 2021, Laura Nydigger, LPC, submitted a statement in support of Plaintiff's claim. Nydigger stated she worked with Plaintiff from January 2019 through August 2020, and that he has "limitations regarding social engagement, and when under pressure from school or others, would feel overwhelmed which led to negative intrusive thoughts and behaviors that impact his daily functioning." Tr. 3878.

The ALJ found Ms. Nydigger's opinion partially persuasive to the extent that the record shows some limitation in social interaction. Tr. 228. The ALJ first noted that Nydigger did not include mental status exams, and that her opinion was based "mostly" on Plaintiff's subjective reports. As discussed above, that Nydigger's opinion comes "mostly" from self-reports is not a sufficient reason to reject her opinion. And, as Plaintiff points out, Nydigger's records do contain some limited observations of Plaintiff during neurofeedback sessions. However, the clinical observations are more often statements regarding Plaintiff's demeanor during sessions, rather than objective mental status exams. For example, in January 2019, Nydigger's observation note

11 - Opinion and Order

states that "[c]lient is anxious about the process but is motivated to make changes for the better." Tr. 3879. In March and April of 2019, Nydigger observed that Plaintiff was "calm in session and positive." Tr. 3884, 3885, 3886, 3887, 3888, 3889. These observations, while possibly instructive as to Plaintiff's overall demeanor during therapy, are not objective mental status exams, as Plaintiff would have the court believe.

Additionally, the ALJ reasonably accounted for the limitations proposed in Nydigger's opinion in the RFC. Specifically, the RFC accommodates his limitations in "social engagement" by limiting Plaintiff to no more than occasional interaction with supervisors, coworkers and the public. Tr. 228, 3878. Plaintiff tendency to feel overwhelmed was similarly accommodated by limiting him to performing "simple repetitive tasks" with limiting his decision making to only "simple, work-related decisions." Tr. 228. Plaintiff fails to argue any specific error, but instead asserts that "it is the pressure that leads to negative intrusive thoughts, not the complexity." Pl. Br. at 17 (emphasis in original). It is entirely unclear to the court, what—if any—further limitations Plaintiff believes the ALJ should have gleaned from Nydigger's opinion. The court thus declines the opportunity to speculate on possible further limitations on Plaintiff's behalf.

## II.    Subjective Symptom Testimony

Plaintiff testified that he is unable to work because he has "difficulty trusting his coworkers" and "fear[s] for his safety." Tr. 244. Plaintiff stated that pressure exacerbates his symptoms of depression, paranoia, and anxiety, which make it difficult to work. Tr. 245-48. The ALJ discounted Plaintiff's symptom allegations as inconsistent with his treatment records and his activities of daily living. Tr. 226. Plaintiff now argues that the ALJ failed to identify "specific, clear and convincing reasons supported by substantial evidence" to reject his subjective symptom testimony. Pl. Br. at 17.

12 - Opinion and Order

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion that the claimant is not credible is insufficient; instead, the ALJ "must state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Social Security Ruling ("SSR") 16-3p provides that "subjective symptom evaluation is not an examination of an individual's character," and requires that the ALJ consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, 2017 WL 5180304, at *2 (S.S.A. Oct. 25, 2017). The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

### A. Medical Records

In some circumstances, an ALJ may reject subjective complaints where the claimant's "statements at her hearing do not comport with objective medical evidence in her medical

13 - Opinion and Order

record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, a lack of objective evidence may not be the sole basis for rejecting a claimant's subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

The ALJ relied, in part, on Plaintiff's medical records to discount his symptom allegations. In his consideration of the evidence, the ALJ noted Plaintiff's symptoms tended to wax and wane, depending on external factors such as videogame use and inconsistent prescription medication use. Tr. 225-27. The ALJ also noted that Plaintiff refused medication management for a time during the relevant period, but when he was compliant with medications, his symptoms improved. Tr. 227. Additionally, although Plaintiff presented with symptoms of depression and anxiety, he otherwise had normal mental status exams. These are not, as Plaintiff argues, examples of cherry picking only favorable evidence; this evidence reflects the ALJ's thorough summary of the record, including the evidence that both supports and detracts from Plaintiff's disability claim.

### B. Activities of Daily Living

The ALJ Activities of daily living may provide a basis for discounting subjective symptoms if the Plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014).

At his hearing, Plaintiff stated that he lived at home with his parents and was on track to graduate with an associate's degree and a certificate in web design in 2022. Tr. 246, 248. Plaintiff stated he was taking two internships, one paid and one unpaid, in pursuit of his degree program.

14 - Opinion and Order

He explained that one internship was through his school, while the other he found on his own "reaching out to local businesses, just to see if [he] could get an internship." Tr. 246. Plaintiff asserts that the ALJ failed to provide specific reasons for finding his daily activities were inconsistent with his symptom allegations. Pl. br. at 16-17. Upon review, however, the ALJ's reasoning is clear and convincing, and the court can find no basis to disturb his ultimate disability determination. Plaintiff is able to engage in activities that exceed his RFC limitations, including frequent travel, regularly engaging with friends, working part time, attending classes regularly, and participating in two internships. Moreover, the ALJ reasonably accommodated Plaintiff's credible symptoms in the RFC, including limiting his exposure to the public, coworkers, and supervisors, and further limiting his exposure to stress inducing scenarios. Tr. 225.

## ORDER

In sum, the ALJ properly evaluated the medical opinions and to the extent the ALJ erred in the evaluation of one medical opinion, such error was harmless. Furthermore, the ALJ provided clear and convincing reasons supported by substantial evidence in rejecting subjective symptom testimony. The decision of the Commissioner is AFFIRMED.

It is so ORDERED and DATED this 26 day of MARCH, 2025.

MARK D. CLARKE
United States Magistrate Judge

15 - Opinion and Order